UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MARQUIETTA BOWENS-WHITE**
**and ALVIN O. WHITE II,**

      **Plaintiffs,**                          Case No.: 4:24-cv-375-MW-MAF

v.

**LEON COUNTY SCHOOL BOARD,**

      **Defendant.**
_____/

## AMENDED COMPLAINT

Plaintiff, MARQUIETTA BOWENS-WHITE and ALVIN O. WHITE II, hereby sues Defendant, LEON COUNTY SCHOOL BOARD, and alleges:

### NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the First Amendment to the United States Constitution under and through 42 U.S.C. §1983. Attorney's fees are due under 42 U.S.C. §1988.

2. This is an action involving claims which are, individually, in excess of Fifty Thousand Dollars ($50,000). This case was removed to this Court by the Defendant.

## PARTIES

3. At all times pertinent hereto, Plaintiff, MARQUIETTA BOWENS-WHITE, (Plaintiff) has been a resident of LEON County, FL. She is *sui juris*.

4. At all times pertinent hereto, Plaintiff, ALVIN O. WHITE II, (White) has been a resident of LEON County, FL. He is *sui juris*.

5. At all times pertinent hereto, Defendant, LEON COUNTY SCHOOL BOARD, has been organized and existing under the laws of the State of Florida within the jurisdictional boundaries of this Court.

## CONDITIONS PRECEDENT

6. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF FACTS – MARQUIETTA BOWENS-WHITE

7. Plaintiff began her employment with Defendant in or around September 2014 and currently holds the position of School Social Worker at Ghazvini Learning Center. Plaintiff has held this position since 2021 and her position has been funded under a Mental Health Grant.

8. Plaintiff is a loyal and dedicated employee who regularly received verbal and documented recognition for her stellar work performance.

9. On December 20, 2023, Plaintiff's son, Alvin O. White II (hereinafter "White"), publicly endorsed candidate Joe Burgess for his election for

Superintendent of Defendant. This was posted on White's social media platform along with a picture of Plaintiff and Burgess.

10. Subsequently on or around December 20, 2023, White received an unsolicited text message from Joan Thomas, the mother of Rocky Hanna, incumbent for re-election of Superintendent of Defendant. In this message, Thomas expressed disappointment in White's support for candidate Joe Burgess for Superintendent.

11. On Wednesday, March 6, 2024, prior to Spring Break, Ghazvini Principal Amy Alvis informed Plaintiff that Director II of Elementary Schools, Anicia Robinson, and Tonja Fitzgerald, Divisional Director of Health, Wellness & Student Services, had contacted her to announce that, effective immediately, Plaintiff would be transferred to Augusta Raa Middle School on the Monday following Spring Break. This development was unforeseen to Plaintiff, as she had received no prior warning of the transfer, she did not want the transfer and had done nothing to deserve being transferred. In fact, just a week earlier, she had received verbal commendations for the Black History Program she organized at the Ghazvini.

12. Notably, Robinson and Fitzgerald are both employed at the District Office and work under the supervision of Hanna.

13. Alvis further advised Plaintiff that she expressed her concern to Robinson and Fitzgerald, stating that Plaintiff's departure would be a significant loss to the school community, particularly with only nine weeks remaining in the school year.

14. Despite Alvis's plea, she was informed that Principal Marcus Scott urgently needed a School Social Worker and, since Fitzgerald funded Plaintiff's position, she was going to be transferred. Alvis proposed funding Plaintiff's position for the remaining nine weeks using funds from two open teacher positions, but this request was denied by Robinson and Fitzgerald. She also suggested that Plaintiff rotate to Augusta Raa Middle School as needed until a permanent School Social Worker was hired, but this request was also denied, again, by Robinson and Fitzgerald.

15. Plaintiff explained to Alvis that the School Social Worker position at Augusta Raa Middle School falls under the immediate supervision of Kim Scott, within Student Services, and therefore, a School Social Worker should be appointed from her department, not from the Mental Health Grant.

16. Alvis stated that she did not anticipate any changes being made before the end of the school year. She further indicated her intention to bring Plaintiff back to Ghazvini Learning Center using Title I funds, another source of funding, rather than the Mental Health Grant that Plaintiff's position was then funded under

if Robinson and Fitzgerald cut the Mental Health funding for Plaintiff's position. When Plaintiff inquired whether Alvis knew if Fitzgerald's Mental Health Grant was ending, Alvis responded that, to her understanding, the Grant was not ending but that funds were limited, and Fitzgerald would decide who would continue to be funded by the Grant.

17. Notably in August 2021, Fitzgerald began receiving Mental Health funds to support additional School Social Workers and subsequently posted two positions on the Defendant's employment website, including one for Ghazvini Learning Center (GLC), which Plaintiff was selected for. Despite Plaintiff being one of the first two recipients of this Grant, Fitzgerald continued to fund other School Social Workers hired after the Plaintiff under the Grant for a total of 27 social workers. Meanwhile, the funding for Plaintiff's position appears to have been discontinued, even though Fitzgerald assured Plaintiff via email on December 6, 2022, that her position at Ghazvini Learning Center would continue to be funded under the Mental Health Grant.

18. On Wednesday, March 6, 2024, Plaintiff wrote an email to Alvis, copying Robinson and Fitzgerald. In this email, Plaintiff expressed her concern, feelings of distress, and the toll this situation of not knowing whether she still had a position or not with Defendant had taken on her mental health. Neither Robinson

nor Fitzgerald responded to Plaintiff to provide further direction or information regarding her transfer.

19. Plaintiff then discovered that Scott posted the School Social Worker position at Raa Middle School on the Leon County School employment website, conducted interviews, and was in the process of hiring a School Social Worker to start at Raa Middle School after Spring Break which was when Plaintiff was supposed to be transferred to Raa. There was thus never a need to have transferred Plaintiff in the first place to Raa.

20. On March 8, 2024, Alvis informed Plaintiff that Robinson had called and stated that Plaintiff would no longer be transferred to Augusta Raa Middle School. On Monday, March 18, 2024, Alvis was instructed to email Plaintiff, confirming that Plaintiff would remain at Ghazvini Learning Center for the rest of the school year; however, Plaintiff's position, funded through the Mental Health Grant, would terminate at the end of the 2023/24 school year. To the best of Plaintiff's knowledge and belief, Plaintiff is the only person who has lost the funding for her position under the Mental Health Grant although she is doing the same job the other 26 School Social Workers are doing under the Mental Health Grant.

21. Plaintiff's job funding was thus unjustly withdrawn, leaving Alvis to seek alternative funding arrangements for Plaintiff's position. Alvis assured

Plaintiff that she would fund Plaintiff's position out of her Title I budget for the 2024-2025 school year.

22. On Tuesday, March 19, 2024, Alvis verbally informed Plaintiff that the projected Title I budget for the next school year had been cut by $60,000, equivalent to the salary of a teacher. Despite this, Alvis expressed hope, noting that it was just a projection. On Friday, March 29, 2024, Alvis stated that she had been working tirelessly with her budget to secure funding for Plaintiff's position for the next school year, 2024/25. Alvis mentioned that the worst-case scenario would involve a reduction in hours, resulting in Plaintiff working a 7.5-hour day instead of an 8.5-hour day, equating to a significant 20-hour per month pay deduction for Plaintiff.

23. In April 2024, Plaintiff received a reappointment letter from Alvis, indicating that she would return to work for the 2024/25 school year. However, the letter also noted that due to budgetary constraints, this decision could be subject to change.

24. Notably, Fitzgerald withdrew Plaintiff's Mental Health funding, while none of the current Student Services School Social Workers, who were hired after the Plaintiff in September 2021, have had their funding withdrawn. Although Plaintiff currently works at Ghazvini for the 2024/25 school year, she does not know where funding for her position will come from hereafter and whether she

will remain at Ghazvini with the same number of hours, 8.5, that she currently works.

25. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## STATEMENT OF FACTS – ALVIN O. WHITE II

26. Plaintiff Alvin White is the son of Plaintiff Marquietta Bowens-White. He began his employment with Defendant on or around February 7, 2017 and currently holds the position of Leon County School Teacher at Defendant's James S. Rickards High School, located at 3013 Jim Lee Rd, Tallahassee, FL 32301.

27. Plaintiff White is a loyal and dedicated employee.

28. On or around December 20, 2023, White publicly endorsed candidate Joe Burgess for his election for Superintendent of Defendant. This was posted on his social media platform along with a picture of White and Burgess.

29. Subsequently, on or around December 20, 2023, White received an unsolicited text message from Joan Thomas, the mother of Rocky Hanna, incumbent for re-election of Superintendent of Defendant. In this message, Thomas expressed disappointment in White's support for candidate Joe Burgess for Superintendent.

30. Then, on or around January 22, 2024, LCS LaRoderick McQueen, 63004- Divisional Director Support Services, Code and Compliance Enforcement, and Small Business Enterprise fabricated accusations to White's boss, Principal Douglas Cook, accusing White of engaging in political discussions with bus drivers during work hours. It was alleged that White discussed Superintendent Rocky Hanna's race and had violated school board policy, which White vehemently denied.

31. Notably, McQueen works under the supervision of Hanna.

32. White wrote an email to Principal Cook, McQueen, McQueen's superiors and Teacher Union Representative expressing that the statements made against him were false. White was assured by Cook that he held White in the highest regard and the purpose of the e-mail was just to inform him and reinstate the district's policy. To date, McQueen has not responded nor provided evidence regarding his unfounded allegations.

33. On or around February 4, 2024, the District Labor Relations Office for Leon County Schools contacted Cook, stating White posted a video that was against policy per a state statute. This claim was never substantiated and there was no policy at the time preventing White from posting the video. Once made aware of this allegation, White explained that the video was part of a Positive Behavior Intervention Support (PBIS) initiative, in which all high schools across the county,

9

state, and country were participating via TikTok. To support his explanation, White provided Cook with examples of other schools engaging in similar TikTok activities.

34. Notably, on February 23, 2024, Amos P. Godby High School posted a similar video, which was subsequently shared on the Leon County Schools (LCS) Instagram story by the district office.

35. On February 13, 2024, Thomas, Rocky Hannah's mother, sent another unsolicited message to White, implying that the White was being corrupted by financial gain or a pursuit of power and that his future happiness was at stake due to supporting Joe Burgess for Superintendent of Leon County Schools.

36. This was a direct threat to White's job and the information Thomas had had to have come from inside the School District, namely, from her son, Rocky Hannah.

37. On October 8, 2024, White was told by his Principal, Douglas Cook, at Rickard's High School that additional complaints had been made against him for something White did wrong but there were no specifics in the allegations. After consulting with one of the alleged complainants, this individual stated that she never made the complaint. The other alleged complainant never returned calls inquiring about the complaint. White's Principal has advised White that he believes that Plaintiff is being harassed at this point.

38. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## FIRST AMENDMENT RETALIATION
### (Brought by Plaintiff Bowens-White)

39. Paragraphs 1 through 25 above are incorporated herein by reference. This count is pled in the alternative.

40. This count sets forth a claim against Defendant for the violation of Plaintiff Bowens-White's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff Bowens-White is protected from retaliatory actions due to her association with her son, who engaged in constitutionally protected speech when he publicly endorsed candidate Joe Burgess in his election for Superintendent.

41. Because of her association, Plaintiff Bowens-White was the victim of retaliatory actions set forth by Defendant, which association was the motivating factor behind the retaliatory actions, consisting of, in part, the withdrawal of funding for Plaintiff's position.

42. Defendant's actions are the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising First Amendment right to free speech/expression.

43. The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of her son's First Amendment right to free speech/expression.

44. At all times material hereto, Defendant is a person under the laws applicable to this Count and acted under color of law.

45. Defendant's actions occurred through final policymakers, i.e. Anicia Robinson, and Tonja Fitzgerald, that is, persons whose actions fairly represent the actions and motives of the Defendant.

46. Defendant's actions against her have caused her to feel intimidated, fearful, like she is walking on eggshells and that she could be called into her Principal's office and fired any day.

47. As a direct and proximate cause of those actions, for which Defendant is responsible, Plaintiffs have been damaged, which damages include: lost wages, lost benefits, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation and other tangible and intangible damages. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff is entitled to injunctive relief.

## COUNT II
## FIRST AMENDMENT RETALIATION
### (Brought by Plaintiff White)

48. Paragraphs 1-6 and 26-38 above are incorporated herein by reference. This count is pled in the alternative.

49. This count sets forth a claim against Defendant for the violation of Plaintiff White's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff White engaged in constitutionally protected speech when he publicly endorsed candidate Joe Burgess in his election for Superintendent.

50. After engaging in protected speech as related in part above, Plaintiff White was the victim of retaliatory actions set forth by Defendant, and Plaintiff White's protected conduct was the motivating factor behind the retaliatory actions, consisting of, in part, false accusations made against Plaintiff White.

51. Defendant's actions are the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising First Amendment right to free speech/expression.

52. The above actions were taken in violation of Plaintiffs clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment right to free speech/expression.

53. At all times material hereto, Defendant is a person under the laws applicable to this Count and acted under color of law.

54. Defendant's actions occurred through one or more final policymakers, i.e. LaRoderick McQueen and Defendant's District Labor Relations Officer, that is, persons whose actions fairly represent the actions and motives of the Defendant.

55. Defendant's actions against Plaintiff have caused him to feel intimidated, fearful, like he is walking on eggshells and that he could be called into his Principal's office and fired any day.

56. As a direct and proximate cause of those actions, for which Defendant is responsible, Plaintiffs have been damaged, which damages include: lost wages, lost benefits, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation and other tangible and intangible damages. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff is entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants'

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demand a trial by jury on all issues set forth herein which are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by CM/ECF this 28th day of October, 2024.

/s/ Marie A. Mattox
Marie A. Mattox